United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

v.

Vitalii Alexandrovich Balint,

        Defendant.
                               /

Case No. 2:24-cr-20416

Hon. Nancy G. Edmunds

# Plea Agreement

The United States of America and the defendant, Vitalii Alexandrovich Balint, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1. Count of Conviction**

The defendant will waive his right to an indictment and will plead guilty to Count 1 of the Information. Count 1 charges the defendant with Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349.

**2. Statutory Minimum and Maximum Penalties**

The defendant understands that the count to which he is pleading guilty carry the following maximum statutory penalties:

| Count 1 | Term of imprisonment: | 20 years |
| --- | --- | --- |
| | Fine: | $250,000 |
| | Term of supervised release: | 3 years |

3. **Elements of Count of Conviction**

The elements of Count 1 are:

> **First**, that the defendant and at least one other person conspired, or agreed, to commit the crime of Wire Fraud (18 U.S.C. § 1343); and
>
> **Second**, that defendant knowingly and voluntarily joined the conspiracy.

The elements of the crime of Wire Fraud (18 U.S.C. § 1343), the object of the conspiracy are:

> **First**, knowingly participating in a scheme to defraud in order to deprive another of money or property;
>
> **Second**, that the scheme included a material misrepresentation or concealment of a material fact;
>
> **Third**, the intent to defraud; and
>
> **Fourth**, the use of wire communications in interstate commerce in furtherance of the scheme

4. **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

On or about dates between 2017 and 2021, defendant Vitalii Alexandrovich Balint willfully and knowingly participated in the operation of a "botnet," a network of computers compromised by malware. The malware enabled the botnet operators to surreptitiously load any software they wished onto the compromised computers. While the conspirators were located outside of the United States, they worked together to compromise computers in several countries, including the United States.

To install malware on a targeted computer, it was typically necessary to deceive the computer's operator into assisting. For example, the botnet's malware was commonly installed by tricking an operator into clicking on a file attached to an email that appeared to be sent by an individual or organization that the operator trusted.

The managers of the conspiracy profited by selling access to the compromised computers that comprised the botnet. They charged

customers—other cybercriminals—for the opportunity to load software onto one or more of the compromised computers. This software was loaded on to these computers without the knowledge of their legitimate operators for the purpose of defrauding them, typically through the installation of malware known as "ransomware." Ransomware, when triggered, encrypts the entirety of a target's computer, making it unusable and depriving the victim of access to their data stored therein. The ransomware then typically prompts the victim to pay a fee—commonly in bitcoins or another cryptocurrency—to obtain the key to decrypt their computer.

Balint supported the operation of the botnet by coding software that enabled mass-mailing of spam emails containing malware infected files. Balint was monetarily compensated for his work by the managers of the botnet, earning at least $475,000. In addition to this amount, he earned at least $167,000 for coding projects supporting the operation of similar criminal operations.

In coordination with his coconspirators, Balint was responsible for loading malware on to numerous computers within the United States, including computers located within the Eastern District of Michigan.

The malware was transmitted to the victim computers from outside of the United States through the internet.

## 5. Advice of Rights

The defendant has read the information, has discussed the charge and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

  G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

  H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

  I. The right to compel the attendance of witnesses at trial.

## 6. Collateral Consequences of Conviction

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

## 7. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way;

denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

§ 2B1.1(b)(1)(H): Loss More than $550,000;[1]

§ 2B1.1(b)(3)(A)(i): More than ten victims; and

§ 2B1.1(b)(10)(C): Sophisticated Means.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

---

[1] Calculated from defendant's gain pursuant to Note (B) to table USSG § 2B1.1(b).

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 7.B, 7.C, or 7.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 7.B, 7.C, or 7.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 8. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the low point of the defendant's guideline range as determined by the Court.

#### 2. No Right to Withdraw

The government's recommendation in paragraph 8.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C. Supervised Release

#### 1. Recommendation

The parties have no agreement as to supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 8.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

The parties have no agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F. Forfeiture

Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) as incorporated by 28 U.S.C. § 2461(c), without

contest, any and all right, title, and interest, he may possess in property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the scheme underlying his violation of Count 1 of the Information.

The forfeiture agreement includes the imposition of a Forfeiture Money Judgment against the defendant in favor of the United States in the amount of $475,000, which represents the amount defendant personally obtained as a result of his violation of Count 1 of the Information; specifically, defendant's compensation for his work by the managers of the botnet.

Defendant agrees that the Forfeiture Money Judgment may be satisfied, to whatever extent possible, from any property owned by the defendant or under his dominion and control. To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise. The Forfeiture Money Judgment shall be reduced by the net proceeds

derived from any assets seized from the defendant and forfeited to the United States as substitute assets.

Defendant agrees to the entry of one or more orders of forfeiture incorporating the forfeiture of property and money judgment, including the Court's prompt entry of a Preliminary Order of Forfeiture as to the Forfeiture Money Judgment, following defendant's guilty plea, upon application by the United States at, or any time before, his sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. Defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the Government.

Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(l)(J), at the time his guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including, but not limited to, any Double Jeopardy challenge and any challenge that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

### G. Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 9. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

## 10. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28

U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 11. Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any

additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 12. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 13. Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

### 14. Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

### 15. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 on June 16, 2025. The

government may withdraw from this agreement at any time before the defendant pleads guilty.

|  |  |
|---|---|
|  | JEROME F. GORGON JR.<br>United States Attorney |
| *(signature)*<br>Ryan A. Particka<br>Chief, White Collar Crime Unit<br>Assistant United States<br>Attorney | *(signature)*<br>Timothy J. Wyse<br>Assistant United States<br>Attorney |

Dated: May 22, 2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Attorney for Defendant
BENTON MARTIN

Dated: 6/17/25

_____
Vitalii Alexandrovich Balint,
Defendant